```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
SAID GSSIME,

                    Plaintiff,           MEMORANDUM & ORDER
                                         09-CV-5581(JS)(ETB)
         -against-

DR. WATSON, OFFICER BARTEN,
OFFICER ROMAN and the NASSAU
COUNTY SHERIFF,

                    Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:      Said Gssime, pro se
                    98A5384
                    Gouverneur Correctional Facility
                    P.O. Box 480
                    Gouverneur, NY 13642

For Defendants:
Barten, Roman,      Liora M. Ben-Sorek, Esq.
and Nassau          Peter A. Laserna, Esq.
                    Nassau County Attorney's Office
                    One West Street
                    Mineola, NY 11501

Dr. Watson          No appearances.

SEYBERT, District Judge:
```

Pro se Plaintiff Said Gssime sued Defendants Dr. Watson, Corrections Officers Barten and Roman, and the Nassau County Sheriff's Department (the "Sheriff's Department")[1] for

---

[1] On page three of his Complaint, Plaintiff lists the "Nassau County Sheriff" as "Defendant No. 4." In the narrative section of his Complaint, however, he describes his allegations as being against the Sheriff's Department. But because the Sheriff's Department is not an entity capable of being sued, the Court construes Plaintiff's allegations against the Department as against Nassau County instead. See Mitchell v. N.Y.C. Dep't of

alleged constitutional violations arising out of Plaintiff's living conditions and access to medical care while he was incarcerated at the Nassau County Correctional Center ("NCCC"). Officer Barten, Officer Roman, and the Sheriff's Department (the "Moving Defendants") moved for judgment on the pleadings. (Docket Entry 30.) For the following reasons, this motion is GRANTED IN PART AND DENIED IN PART, and Plaintiff will be permitted to file an Amended Complaint within thirty (30) days. Dr. Watson has not appeared despite having been served with process in May 2010. (Docket Entry 23.)

BACKGROUND

Plaintiff is currently incarcerated upstate, but his allegations stem from a period in 2009 when Plaintiff was held at the NCCC. The following discussion is drawn from Plaintiff's alleged facts, which are presumed to be true for the purposes of this motion.

I. Dr. Watson

Plaintiff alleges that in July 2009 he was transferred from the Marcy Correctional Facility to the NCCC for legal proceedings. Upon his arrival, Plaintiff "brought all [his] medical issues" to Dr. Watson's attention during sick call.

---

Corrections, No. 10-CV-0292, 2011 WL 503087, at *2 (S.D.N.Y. Feb. 14, 2011). As noted in the conclusion, the Clerk of the Court is directed to add Nassau County in place of the "Nassau County Sheriff."

2

(Compl. at 4.) Plaintiff described his medical issues in this manner: "in regard to my eyes, and to fix my broken glasses. To be seen by a specialist, neurologist, for seizures, and specialists for bone disease." (Id.) According to Plaintiff, Dr. Watson was dismissive and refused to refer him to a specialist. (Id.) As a result, Plaintiff suffered the following symptoms: nerve damage and numbness, permanent damage to his left eye, crooked joints, daily nosebleeds, seizures, head injuries, rheumatism, daily headaches, severe psychological trauma, fatigue, and memory loss. (Id.)

## II. Corrections Officer Barten

As to Officer Barten, Plaintiff alleges that, in September 2009, Barten "found information relating to the nature of [Plaintiff's] criminal offense" and, "in front of different groups of gansters," called Plaintiff an "arsonist" and stated "you burned a garage. What else?" (Id. at 6.) Barten also accused Plaintiff of "snitching" about Barten's criminal activities and threatened to cut Plaintiff's face in a manner that would require stitches. (Id.) At his request, Plaintiff was transferred off Barten's cell block in November 2009; as Plaintiff prepared to move, Barten "continued cursing and threatening" Plaintiff. Plaintiff also alleges that Barten falsely cited Plaintiff for a jailhouse infraction. This led to

3

Plaintiff's being sent to a different housing unit for a week until a sergeant determined that Plaintiff was innocent. (Id.)

III. Corrections Officer Roman

Plaintiff alleges that the law library supervisor, Officer Roman, denied Plaintiff access to legal materials because Plaintiff is white. (Id. at 7.) When Plaintiff tried to show Roman a letter purporting to grant Plaintiff access, Roman responded: "I don't [sic] care less if you drop dead today." (Id.) Plaintiff further claims that Roman forcibly took two legal envelopes from Plaintiff (although there is no allegation that the envelopes contained legal materials) and said: "you S.O.B., you don't need free envelopes . . . get the F out of here." (Id.)

IV. Nassau County

As against Nassau County, Plaintiff alleges that the living conditions at the NCCC caused him to develop a respiratory problem, poor vision, and a skin condition. (Compl. at 8.) He also asserts that he was denied free underwear, socks, and toothpaste and that unnamed corrections officers sell drugs and cigarettes on the black market. (Id.)

Plaintiff further alleges that he was denied medical treatment, and he referenced a letter he wrote to United States Magistrate Judge Marian W. Payson complaining that the NCCC was ignoring his medical needs. (Id. at 8.) On November 16, 2009,

Judge Payson forwarded that letter to Nassau County's acting Sheriff, Michael Sposato. Sposato did not act on Judge Payson's letter (id.), and Plaintiff filed this action on December 21, 2009. Attached to the Complaint are copies of both his letter to Judge Payson and Judge Payson's forwarding letter to Sposato.

## DISCUSSION

Liberally construed, Plaintiff's Complaint purports to raise the following claims: that (1) Dr. Watson and Nassau County were deliberately indifferent to Plaintiff's medical needs (Compl. at 4); (2) Officer Barten harassed Plaintiff and threatened to cut his face (id. at 6); (3) Officer Barten falsely accused Plaintiff of an unspecified infraction, which resulted in Plaintiff's being locked up for a week (id. at 6); (4) Officer Barten retaliated against Plaintiff; (5) Officer Roman denied Plaintiff access to the jail's law library and legal materials, including legal envelopes (id. at 7); and (6) Nassau County did not give Plaintiff free underwear, socks, or toothpaste and confined him in conditions that caused Plaintiff difficulty seeing and breathing and to develop a skin condition (id. at 8). The Court first discusses the legal standard governing judgment on the pleadings and then considers the substance of the Moving Defendants' motion.

I. Legal Standard

The standard for a motion for judgment on the pleadings is the same standard applicable to motions to dismiss under Rule 12(b)(6). L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 429 (2d Cir. 2011). To survive the motion, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007). The complaint does not need "detailed factual allegations[,]" but it demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." Id. Determining whether a plaintiff has met his burden is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Because Plaintiff is litigating pro se, the Court reads his Complaint liberally, see, e.g., Mancuso v. Hynes, 379 F. App'x 60, 61 (2d Cir. 2010), and interprets his papers to

"raise the strongest arguments that they suggest" <u>Corcoran v. N.Y. Power Auth.</u>, 202 F.3d 530, 536 (2d Cir. 1999) (quoting <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999)).

II. <u>Plaintiff's Claims against the Moving Defendants</u>

Plaintiff's constitutional claims are founded on Section 1983 of Title 42 of the United States Code, which provides in part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. To state a claim under this law, a plaintiff must allege: (1) that the defendant acted under color of state law; and (2) that as a result of the defendant's actions, the plaintiff suffered a deprivation of his or her rights or privileges as secured by the Constitution or laws of the United States. <u>See</u> <u>Am. Mfr. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50, 119 S. Ct. 977, 985, 143 L. Ed. 2d 130, 143 (1999).

A. <u>Plaintiff's Claims against Officer Barten</u>

Plaintiff's four claims against Barten are that Barten (1) verbally harassed him; (2) threatened to cut his face; (3) falsely cited him for a jailhouse infraction; and (4) retaliated

7

against Plaintiff for reporting Barten's criminal activities. Plaintiff does not allege any injury arising from this conduct, however, and thus the Court construes his damages to be limited to compensation for his emotional distress. As such, these claims are barred by the Prison Litigation Reform Act (the "PLRA"), which bars inmates from bringing a federal action for mental or emotional injuries "without a prior showing of physical injury." 42 U.S.C. § 1997e(e); Yeldon v. Ekpe, 159 F. App'x 314, 316 (2d Cir. 2005); Gousse v. Whitfield, No. 99-CV-10665, 1999 WL 1029715, at *1 (S.D.N.Y. Nov. 10, 1999); cf., Liner v. Goord, 196 F.3d 132, 135-36 (2d Cir. 1999).

B. Plaintiff's Claims against Officer Roman

Plaintiff asserts claims against Roman arising out of Roman's derogatory comments and his denying Plaintiff access to the law library and legal materials. In both cases, Plaintiff fails to state a claim. As to the comments, they may have been "boorish and reprehensible" but they did not amount to a constitutional violation. Liggins v. Parker, No. 04-CV-0966, 2007 WL 2815630, at *17 (N.D.N.Y. Sept. 25, 2007) ("[R]egardless of how boorish and reprehensible such conduct may appear, verbal harassment of inmates by prison officials generally does not arise to a level of constitutional significance."). In any event, this claim would also be barred by the PLRA because Plaintiff has not alleged a physical injury. See supra at 7-8.

Plaintiff also fails to state a claim based on the denial of access to the legal materials. "The right of access of prisoners, 'as described by the Supreme Court, is rooted in the constitutional guarantees of equal protection of the laws and due process of law.'" Avent v. New York, 157 F. App'x 375, 376-77, (2d Cir. 2005) (quoting Bourdon v. Loughren, 386 F.3d 88, 95 (2d Cir. 2004)). "While inmates have no 'abstract, freestanding right to a law library or legal assistance,' an inmate can state a claim for denial of access to the courts where he alleges that the 'shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.'" Id. (quoting Lewis v. Casey, 518 U.S. 343, 351, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)). Here, however, Plaintiff has not alleged that any actual harm befell him as a result of being denied access to legal materials.

   C. <u>Plaintiff's Claims against Nassau County</u>

Plaintiff appears to assert a claim for deliberate indifference to his medical needs and to the living conditions at the NCCC. (See Compl. at 8.) To establish an Eighth Amendment violation, a plaintiff must satisfy a two-pronged test. See Williams v. Carbello, 666 F. Supp. 2d 373, 378 (S.D.N.Y. 2009). Under the objective prong, "the deprivation alleged by the prisoner must be in objective terms sufficiently serious such that the deprivation den[ied] the minimal civilized

9

measure of life's necessities." Branham v. Meachum, 77 F.3d 626, 630 (2d Cir. 1996) (internal quotation marks omitted). Under the subjective prong, "the prison officials must have acted with deliberate indifference in that they kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Id. (internal quotation marks omitted).

In this case, Plaintiff's Eighth Amendment claims can be broken down into a living conditions claim and a medical mistreatment claim. The living conditions allegations--i.e., that the (1) Sheriff's Department's refused Plaintiff free socks, underwear, and toothpaste, and (2) NCCC's environmental conditions caused Plaintiff's poor health--do not state a claim for relief. As to the underwear, socks, and toothpaste, Plaintiff does not claim he was denied these items altogether; rather, he claims he was wrongfully charged for them. This does not rise to the level of an Eighth Amendment violation. See Trammell v. Keane, 338 F.3d 155, 165 (2d Cir. 2003) (outright denial of toiletries--other than toilet paper--for two weeks did not constitute an Eight Amendment violation). As to the environmental conditions, Plaintiff offered no explanation of what the harmful conditions were and how they caused his ailments. See Williams, 666 F. Supp. at 379 (inmate's general allegations, lacking particularized facts, were insufficient to state a living conditions claim).

The Court now turns to Plaintiff's medical mistreatment claim against Nassau County. At the outset, the Court assumes without deciding that Plaintiff has stated a deliberate indifference claim against Dr. Watson. Nevertheless, Dr. Watson's conduct is not automatically imputed to the County in a Section 1983 action. <u>Barreto v. Suffolk</u>, 762 F. Supp. 2d 482, 491 (E.D.N.Y. 2010); <u>Gil v. Vogilano</u>, 131 F. Supp. 2d 486, 492 (S.D.N.Y. 2001); <u>see</u> <u>also</u> <u>Murray v. Johnson, No. 260</u>, 367 F. App'x 196, 197 (2d Cir. 2010) (noting that municipality could not be held liable under Section 1983 "unless the actions allegedly constituting deliberate indifference were performed pursuant to some official municipal policy"). Instead, to establish liability over a municipal defendant "a plaintiff is required to plead three elements: '(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" <u>Barreto</u>, 762 F. Supp. at 491 (quoting <u>Zahra v. Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995)). There are four ways to plead a municipal custom or policy:

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the

> part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees.

Id. (quoting Bonds v. Suffolk Cnty. Sheriff's Dep't, No. 05-CV-3109, 2006 WL 3681206, at *2 (E.D.N.Y. Dec. 5, 2006)). As is relevant to this case, "the Second Circuit has held that a plaintiff may demonstrate municipal liability by showing that a municipal 'policymaker' violated plaintiff's constitutional rights." Varricchio v. Nassau, 702 F. Supp. 2d 40, 60 n.7 (E.D.N.Y. 2010) (citing Amnesty Am. v. W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004)).

Here, Plaintiff has stated--albeit barely--a municipal liability claim against Nassau County for deliberate indifference to his medical needs. Construing his pro se Complaint generously, Plaintiff alleges that he was denied appropriate medical treatment on an ongoing basis since Plaintiff arrived at the NCCC. (Compl. at 4.) He further alleges that Sheriff Sposato was made aware of his medical needs via Judge Payson's November 16, 2009 letter. That letter forwarded a copy of Plaintiff's letter, which explained that the NCCC had refused to authorize surgery and that Plaintiff's "health issues are getting worse to the point that I'm unable to hold and write with a pen." (Id. at 11.) The "health issues"

12

in this sentence are fairly read as a reference to the "bone disease" and "nerve damage" Plaintiff described on the letter's previous page. (Id. at 10.) In the Court's view, depriving Plaintiff of treatment for nerve damage that was progressively worsening "is not as a matter of law insufficiently serious to meet the objective requirement." Phelps v. Kapnolas, 308 F.3d 180, 186 (2d Cir. 2002). And, drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has sufficiently alleged the subjective requirement. Sposato--an NCCC policymaker, see, e.g., see Leather v. Ten Eyck, 2 F. App'x 145, 149 (2d Cir. 2001)--was "aware of [a] substantial risk of serious harm" in the sense that he knew that Plaintiff's worsening nerve condition could lead to "death, degeneration, or extreme pain," Felder v. Filion, 368 F. App'x 253, 256 (2d Cir. 2010), but ignored Plaintiff's request for help (Compl. at 8 (alleging that nothing came of Judge Payson's letter to Sposato and that Sposato "encourage[ed] abuse and violations of inmate rights")). See also Phelps, 308 F.3d at 185-86 (explaining that an official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety" and noting that this may be proved by circumstantial evidence, including "the very fact that the risk was obvious").

Accordingly, the Moving Defendants' motion is denied as to Plaintiff's claim that Nassau County was deliberately

13

indifferent to Plaintiff's medical needs. Obviously, the Court's ruling here does not necessarily mean that Plaintiff will prevail on this claim; at this stage, however, Plaintiff's allegations state a barely plausible basis for relief. Phelps, 308 F.3d at 184-85 ("The fundamental issue at the dismissal stage is . . . whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.").[2]

## CONCLUSION

Based on the foregoing discussion, the Moving Defendants' motion for judgment on the pleadings is GRANTED IN PART AND DENIED IN PART. All of Plaintiff's claims against the Moving Defendants except for the deliberate indifference to medical needs claim against Nassau County are dismissed. Additionally, Plaintiff's claims against Dr. Watson survive

---

[2] The Moving Defendants also argue that Plaintiff's Complaint should be dismissed for failure to exhaust his administrative remedies, as is required under the PLRA. (Def. Br. 20-21.) Although dismissal may be appropriate where a Plaintiff's failure to exhaust is apparent on the face of a complaint, Sloane v. Mazzuca, No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006), the Court disagrees with the Moving Defendants that Plaintiff's statement that "two officers are under the internal affairs investigations about my medical need" necessarily means that Plaintiff has not followed the proper administrative course. Where, "as is usually the case, it is not clear from the face of the complaint whether the plaintiff exhausted, a Rule 12(b)(6) motion is not the proper vehicle." McCoy v. Goord, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003).

14

inasmuch as Dr. Watson has not appeared to defend this case. Plaintiff may file an Amended Complaint against all Defendants within thirty (30) days from the date of this Order.

Additionally, although counsel for the Moving Defendants have made clear that they do not represent Dr. Watson, their reply brief suggests that they believe she is an employee of the Nassau University Medical Center ("NUMC"), which provides medical care at the NCCC. (Def. Reply 4.) Counsel for the Moving Defendants is directed to, within fourteen (14) days, inform the Court whether they know if Dr. Watson works for NUMC. If Dr. Watson is an NUMC employee, counsel Defendants shall provide contact information for her so that the Marshals Service may attempt to re-serve process if appropriate.

The Clerk of the Court is respectfully directed to update the docket sheet to add Nassau County in the place of the "Nassau County Sheriff" and to mail Plaintiff a copy of this Order.

SO ORDERED

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

DATED:   February  16 , 2012
         Central Islip, New York